UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW BALANCE ATHLETIC SHOE, INC, ) | CA NO.: 05CV10794GAO |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| YUNTEX ENTERPRISE (HK) LIMITED ) | |
| AND HORACE CHANG, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO APPROVE SERVICE UPON FOREIGN DEFENDANT
HORACE CHANG PURSUANT TO RULE 4(f)(3)**

Now comes the Plaintiff, New Balance Athletic Shoe, Inc. ("New Balance"), and in support of its Motion to Approve Service Upon Foreign Defendant Horace Chang ("Chang") pursuant to Rule 4(f)(3), states that it has made diligent effort to serve Chang in both Hong Kong and Taiwan. Having failed to perfect service, New Balance now seeks to serve Chang in Taiwan by alternative methods approved by the Court and designed to apprise Chang of the instant claim in which New Balance seeks to confirm an arbitration award rendered against Chang and Yuntex Enterprises (HK) Limited ("Yuntex" and with Chang, the "Foreign Defendants"). A proposed Order is appended as Exhibit ("Ex") A to the Motion.  In further support hereof, New Balance, through its counsel, relies upon a declaration of counsel ("Counsel Decl.") (Ex. B), a declaration of Chung Cheng Shen ("Mr. Shen") ("Shen Decl.") (Ex. C), and states as follows:

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

1. New Balance is based in Brighton, Massachusetts and manufactures athletic shoes and apparel. (Counsel Decl., ¶ 3, Ex. B).

2. On December 22, 2004, an American Arbitration Association ("AAA") arbitration panel (International Centre for Dispute Resolution Division) awarded New Balance $9,879,624.00, exclusive of interest and costs (the "Award"), against the "Foreign Defendants" (Counsel Decl., ¶ 4, Ex. B).

3. The Award was based on the Foreign Defendants' infringement on New Balance's intellectual property rights. (Counsel Decl., ¶ 5, Ex. B).

4. The Foreign Defendants defended New Balance's arbitration claim and were represented by counsel throughout the arbitration proceedings. (Counsel Decl., ¶ 6, Ex. B).

5. The Foreign Defendants did not satisfy the Award. (Counsel Decl., ¶ 7, Ex. B).

6. On April 21, 2005, Plaintiff's counsel filed its Application to Confirm Arbitration Award and Enter Judgment Upon Award. (Counsel Decl., ¶ 8, Ex. B).

7. On or about April 26, 2005, for New Balance's counsel forwarded to the Foreign Defendants, through their arbitration counsel, waiver of service forms pursuant to Fed. R. Civ. P. 4(d). (Counsel Decl., ¶ 9, Ex. B).

8. On or about May 23, 2005, New Balance's counsel was advised by the Foreign Defendants' arbitration counsel that she no longer represented Yuntex and Chang. Accordingly, on May 28, 2005, Waiver of Service forms were sent directly to the Foreign Defendants via certified mail return receipt requested at Yuntex's last known principal office and Chang's last known residence which each maintained at the time of the arbitration. (Counsel Decl., ¶ 10, Ex. B).

9. The Foreign Defendants never returned the executed Waiver of Service forms. (Counsel Decl., ¶ 11, Ex. B).

10. New Balance, by its counsel, has made diligent efforts to serve the Foreign Defendants both in Hong Kong and Taiwan, but has thus far been unsuccessful. (Counsel Decl., ¶ 12, Ex. B).

11. The current Motion addresses only service as to Chang. The Chief Secretary of Administration in Hong Kong (the "Central Authority"), which coordinates service in Hong Kong pursuant to the Hague Convention, is currently in the midst of processing New Balance's fourth attempt at service upon Yuntex in Hong Kong. Thus, it is premature for New Balance to seek approval for service upon Yuntex pursuant to Rule 4(f)(3). (Counsel Decl., ¶ 13, Ex. B).

12. New Balance has made attempts to serve Chang on three (3) separate occasions, in two countries, involving four (4) discrete locations, since the litigation began. None of those service attempts was successful. (Counsel Decl., ¶ 14, Ex. B).

13. After the Foreign Defendants failed to satisfy the Award, Plaintiff's counsel retained the services of a private investigator to ascertain the whereabouts of the Foreign Defendants so service of the Complaint and Summons could be completed. (Counsel Decl., ¶ 15, Ex. B).

14. Based on the initial investigative work of Plaintiff's private investigator, Plaintiff's counsel was informed that Chang did not appear to be living in Taiwan, where he had maintained a residence during the course of the arbitration. (Counsel Decl., ¶ 16, Ex. B).

15.     Plaintiff's counsel eventually received information, however, that Chang was a Director and shareholder of Ulex Trading Company, Ltd. ("Ulex"), which maintained its principal office in Hong Kong. (Counsel Decl., ¶ 17, Ex. B).

16.     Plaintiff's counsel was also provided with information that the Ulex corporate organization papers listed Chang's residential address as the Chevalier Commercial Center, No. 8, Wang Hoi Road, Kowloon, Hong Kong (the "Chevalier Commercial Center"). (Counsel Decl., ¶ 18, Ex. B).

17.     The Chevalier Commercial Center, coincidentally, is the former corporate address of Yuntex which Yuntex maintained during the course of the arbitration proceeding. (Counsel Decl., ¶ 19, Ex. B).

18.     Plaintiff's counsel knew, based on an unsuccessful attempt at service by the Central Authority in this case upon Yuntex at the Chevalier Commercial Center in July, 2005 that Yuntex no longer occupies that address. Thus, Plaintiff's counsel was well aware that Chang didn't actually maintain the Chevalier Commercial Center as his residential address. (Counsel Decl., ¶ 20, Ex. B).

19.     On October 27, 2005, Plaintiff's counsel sent to the Central Authority an executed USM 94 processing form seeking to have Chang served at the offices of Ulex at its corporate address located at 16/F Apec Plaza, 49 Hoi Yuen Road, Kwun Tong, Kowloon, Hong Kong (the "Apec Plaza"), pursuant to Fed.R.Civ.P. 4 (f)(1). (Counsel Decl., ¶ 21, Ex. B).

20.     On November 23, 2005, a service attempt upon Chang was made at the Apec Plaza but was unsuccessful (Counsel Decl., ¶ 22).

21.  Based on the further investigative efforts of a private investigative service, Plaintiff's counsel was directed to two other potential addresses for Chang at which service could be attempted:

    a.  19 Hui-Lai Road
    Sec. 1
    Nan-Tun District
    Tai Chung City
    Taiwan
    ("Hui-Lai Road")

    b.  No 21-12
    Lung Hsin Lane
    Feng Hsin Road
    Sec. 2
    Tantzu
    Taichung County
    Taiwan
    ("Lung Hsin Lane")

(Counsel Decl., ¶ 23, Ex. B).

22.  The Hui-Lai Road address purports to be a residential address. (Counsel Decl., ¶ 24, Ex. B; Shen Decl., ¶¶ 5, 7, Ex. C).

23.  The Lung Hsin Lane address is the business address of Chenfeng Machinery & Enterprises Co., Ltd. ("Chenfeng"), a private Company with which Chang is affiliated. He is a Director and shareholder of Chenfeng. (Counsel Decl., ¶ 25, Ex. B; Shen Decl., ¶ 6. Ex. C).

24.  On February 21, 2006, service on Chang was attempted at the Hui-Lai Road address by Mr. Shen, a process server employed by Plaintiff's local counsel in Taipei, Taiwan, Barker McKenzie, pursuant to Fed. R. Civ. P. 4(f)(2)(c)(i). (Counsel Decl., ¶ 26, Ex. B; Shen Decl., ¶¶ 1-5, Ex. C).

25. The service attempt at the Hui-Lai Road address was unsuccessful, but Mr. Shen confirmed that Chang lives there. (Counsel Decl., ¶ 27, Ex. B; Shen Decl., ¶ 5, Ex. C).

26. On the same date, Mr. Shen traveled to the Lung Hsin Lane address of Chenfeng in an effort to serve Chang there. (Counsel Decl., ¶ 28, Ex. B; Shen Decl., ¶ 6, Ex. C).

27. Mr. Shen was advised by a representative of Chenfeng that Chang was then in an undisclosed location in Hong Kong and was not then in Taiwan. (Counsel Decl., ¶ 29, Ex. B; Shen Decl., ¶ 6, Ex. C).

28. Mr. Shen attempted to serve Chang on February 21, 2006 by hand both in this action and in a parallel action pending in Hong Kong in which New Balance seeks to enforce the Award (the "HK Action"). (Counsel Decl., ¶ 30, Ex. B; Shen Decl., ¶¶ 5-6, Ex. C).

29. On March 8, 2006, Mr. Shen made additional attempts at serving Chang pursuant to Fed.R.Civ.P. 4 (f)(2)(C)(i). (Counsel Decl., ¶ 31, Ex. B; Shen Decl., ¶¶ 7-10, Ex. C).

30. First, Mr. Shen traveled to the Hui-Lai Road address and again did not encounter Chang. The attempt at service was unsuccessful. (Counsel Decl., ¶ 32, Ex. B; Shen Decl., ¶ 7, Ex. C).

31. Mr. Shen also traveled on March 8, 2006 to the Lung Hsin Lane address of Chenfeng and was advised, again by a Chenfeng agent, that Chang was out of the country. (Counsel Decl., ¶ 33, Ex. B; Shen Decl., ¶ 10, Ex. C).

32. On March 8, 2006, Mr. Shen also made attempts to serve Chang at two additional locations in Taiwan, but was unsuccessful. (Counsel Decl., ¶ 34, Ex. B; Shen Decl., ¶¶ 8-9, Ex. C).

## **ARGUMENT**

**A.     Standard**

Fed. R.Civ. P. 4(f) allows for service upon individuals in a foreign country by various methods:

> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
>> (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
>>
>> (B) as directed by the foreign authority in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the law of the foreign country, by
>>
>>> (i) delivery to the individual personally of a copy of the summons and the complaint; or
>>>
>>> (ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or
>
> **(3) by other means not prohibited by international**

7

**agreement as may be directed by the court.**

(emphasis added). Rule 4(f) does not denote any hierarchy or preference for one method of service over another. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002); FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 534 (E.D. Va. 2005). Additionally, "no language in Rule 4(f)(1) or 4(f)(2) indicates their primacy." Id. Certainly, a party "need not have attempted every permissible means of service of process before petitioning the court for alternative relief." Rio Props., Inc., 284 F.3d at 1016 (Rule 4(f)(3) service is neither a "last resort" nor "extraordinary relief," but is merely "one means among several" enabling foreign service of process). A District Court, in exercising its discretion under Rule 4(f)(3), may require the plaintiff to show that they have "reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." Ryan v. Brunswick, No. 02CV0133E, 2002 WL 1628933 *7-8 (W.D.N.Y. May 31, 2002).

In order to implement Rule 4(f)(3), the means of service must be 1) directed by the Court, and 2) not prohibited by international agreement, including the Hague Convention referenced in Rule 4(f)(1). FMAC Loan Receivables, 228 F.R.D. at 534. The Hague Convention is a multinational, self-executing treaty concerned with the service of process on foreign defendants. The Convention has been ratified by approximately twenty-three countries, including the United States. Beverly L. Jacklin, Service of Process by Mail in International Civil Action as Permissible Under Hague Convention, 112 A.L.R. Fed. 241 (2004). "The treaty seeks not only to simplify and expedite international service of process, but more importantly, to ensure that service is effected

timely and adequately." Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 383 (5th Cir. 2002). Taiwan is not a party to the Hague Convention or any other international agreement involving service. Cosmetech Intern., LLC v. Der Kwei Enterprise and Co., Ltd., 943 F. Supp. 311, 316 (S.D.N.Y. 1996); See *United States Department of State, Treaties in Force*, available at http://www.state.gov/s/1/treaties.

Service under Rule 4(f)(3) must also comply with Constitutional notions of due process. Specifically, methods of service ordered by the Court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford then an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In conformity with such constitutional notions of due process, courts around the country have utilized the authority of Rule 4(f)(3) to allow for service in varied, non-traditional means, including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, fax, telex and email. See, e.g., Igloo Products Corp. v. Thai Welltex International, 379 F. Supp. 2d 18, 19-20 (D. Mass. 2005) (approving service under Rule 4(f)(3) by ordinary mail to defendant's last known address).

**B.   New Balance Has Made a Diligent Efforts
To  Serve Chang and Alternative
Methods  of Service Are Now Appropriate**

Because Defendant Chang has successfully managed to evade service, this Court should enter an Order permitting Plaintiff to serve Defendant Chang by alternative means consistent with due process.  New Balance has satisfied its obligation to demonstrate that it has reasonably attempted service upon Chang.  See Ryan v. Brunswick, 2002 WL 1628933*7-8 (W.D.N.Y. May 31, 2002).  New Balance, in fact, at great expense, has

9

made three (3) separate service attempts, in two (2) countries, involving five (5) separate service locations, all to no avail.  See generally, Counsel Decl., Ex. B; Shen Decl.¶¶ 5-11, Ex. C.  The service attempt in Hong was made pursuant to Rule 4(f)(1) and the multiple attempts in Taiwan were made pursuant to Rule 4(f)(2)(C)(i).

As indicated above, Taiwan is not a party with the United States in any international agreements which relate to service.  See Cosmetech Intern., LLC v. Der Kwei Enterprise & Co., Ltd., 943 F. Supp. 311, 316 (S.D.N.Y. 1996); *United States Department of State Treaties in Force*, available at http://www.state.gov/s/1/treaties.  To the extent that New Balance only seeks leave to serve Chang in Taiwan, any means directed by this Court would satisfy Rule 4(f)(3) provided that the means are "reasonably calculated" to apprise Chang of this action.  Mullane v. Central Hanover Bank, 33U.S. 306, 314 (1950).

The Plaintiff is seeking an Order authorizing Plaintiff to serve Defendant Chang by an alternative means that are fully consistent with due process.  Specifically:

   a.   mailing the Summons and Complaint to Chang's last know residence at 19 Hui-Lai Road, Sec. 1, Nan-Tun District, Tai Chung City Taiwan ; and

   b.   faxing the Summons and Complaint to the offices of Chenfeng Manufacturing Company Ltd.,  No 21-12, Lung Hsin Lane, Feng Hsin Road, Sec. 2, Tantzu Hsiang, Taichung County, Taiwan (FAX: 886-4-2536-1172); and

   c.   mailing the Summons and Complaint to the offices of Chenfeng Manufacturing Company Ltd. at the same address.

See Proposed Order, Ex. A.  In connection with the two recent service attempts by Mr. Shen at the Hui-Lai Road address, he was able to confirm that Chang resides there.  Shen Decl., ¶¶ 5,7, Ex. C.  Moreover, Chang is a Director and shareholder of Chenfeng Manufacturing.  Shen Decl., ¶¶ 6,10, Ex. C.  Ruth Liao, an agent of Chenfeng, was

familiar with Chang's whereabouts and reported that to Mr. Shen in connection with Mr. Shen's visit to the Chenfeng Manufacturing offices on February 21 and March 8, 2006. Shen Decl., ¶¶ 6,10, Ex. C.  By seeking to serve Chang at both his home address and at the offices of the company at which he is a Director and shareholder, New Balance is attempting to maximize the potential that Chang will obtain notice of this claim.  Courts have routinely approved the alternative means of service contemplated by New Balance under similar circumstances.  See Igloo Products Corp. v. Tai Wellex International, 379 F. Supp. 2d 18, 19-20 (D. Mass. 2005) (approving service by mail to defendant's last known address).  See also Int'l Controls Corp. v. Vesco, 593 F.2d 166, 176-78 (2nd Cir. 1979) (approving service by mail to last known address)[1]; Broadfoot v. Diaz (In re Int'l Telemedia Assoc.), 245 B.R. 713, 719-20 (Bank. N.D. Ga. 2000) (authorizing service by facsimile, electronic mail, and mail to the defendant's last known address); Smith v. Islamic Emirate of Afghanistan, Nos. 01CIV10132 and 01CIV10144, 2001 WL 1658211 *2-3 (S.D.N.Y. December 26, 2001) (authorizing service by publication upon Osama bin Laden and the al-Qaeda organization); New Eng. Merch. Nat'l Bank v. Iran Power Generation & Transmission Co., 495 F. Supp. 73, 80-81 (S.D.N.Y. 1980) (authorizing service by telex to Iranian defendants)[2]; Rio Properties, 284 F.3d at 1016 (authorizing service through electronic mail);  Popular Enterprises v. Webcom Media Groups, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (email service authorized); SEC v. Tome, 833 F.2d 1086, 1093-1094 (2nd Cir. 1987) (condoning service by publication in the *Int'l Herald Tribune*).

---

[1] This case was decided under Fed. R. Civ. P. 4(i)(1)(E), the predecessor to Rule 4(f)(3).
[2] See footnote 1 above.

WHEREFORE, NEW BALANCE prays that this Court allow this Motion and permit service to be made upon Chang consistent with the procedure outlined in the proposed Order, appended as Exhibit A.

**RESPECTFULLY SUBMITTED:**
New Balance Athletic Shoe, Inc.
By its attorneys,


 /s/ James P. Ponsetto_____
James P. Ponsetto BBO# 556144
GREENBERG TRAURIG, LLP
One International Place, Twentieth Floor
Boston, Massachusetts 02110
(617) 310-6000

DATED: March 17, 2006

bos-fs1\184937v06